OPINION OF THE COURT
Gerald Lebovits, J.
Petitioner Southbridge Towers, Inc. commenced this holdover proceeding after terminating respondent Joseph Frymer’s right to occupy the premises for alleged occupancy agreement violations. Respondent moves to dismiss preanswer. Petitioner opposes that motion and cross-moves for use and occupancy.
This is respondent’s second preanswer motion to dismiss. In his first preanswer motion, respondent argued that the petition set forth an incorrect multiple dwelling registration number for the premises. Petitioner then cross-moved to correct the registration number. The court denied respondent’s motion and granted petitioner’s motion.
In this motion, his second preanswer motion, respondent raises two new issues. He argues, first, that the termination notice contains insufficient factual allegations to maintain the proceeding. Under CPLR 3211 (e), the court is unable to entertain this argument in a second motion to dismiss. Respondent also argues that petitioner’s notice to cure, as mailed, did not allow him adequate time to cure. This argument is based on a Court of Appeals opinion decided after respondent filed and the court adjudicated his first preanswer motion to dismiss. (See Matter of ATM One v Landaverde, 2 NY3d 472 [2004].) Respondent may therefore raise it in a second preanswer motion to dismiss. The court agrees that petitioner’s notice to cure gave respondent insufficient time to cure and therefore dismisses the petition. Petitioner’s cross motion for use and occupancy is denied as academic.
I. Facts
The facts are undisputed. Southbridge Towers is a Mitchell-Lama cooperative housing development formed, organized, and operated as a limited-profit housing company under article II of the New York State Private Housing Finance Law. The subject apartment is not subject to rent control or rent stabilization; it is in a building owned by a publicly funded cooperative corporation. But Southbridge Towers is subject to the rules and regulations of the New York State Division of Housing and Community Renewal (DHCR).
Petitioner alleges that, in violation of paragraph 19 (A) (h) of the occupancy agreement and 9 NYCRR 1727-5.3, respondent *806 has not occupied the subject premises as his bona fide principal place of residence. (See affirmation in support of petitioner’s cross motion 11 5.) Petitioner also alleges that respondent has sublet or assigned his right to occupy the apartment to Jacques Poncet. Petitioner further alleges that respondent made false statements on his annual income affidavit concerning his household income. (See affirmation in support of petitioner’s cross motion 11 5.)
On February 4, 2004, petitioner mailed respondent a five-day notice to cure. Petitioner chose to serve the notice by mail alone. (See affidavit of service of five-day notice to cure.) The cure notice enumerated respondent’s alleged violations and required that he cure by February 11, 2004. (See petition, attachment 3.) On February 12, 2004, petitioner mailed respondent a termination notice. The notice stated that respondent must quit the apartment by February 18, 2004. Respondent refused to quit the apartment, and petitioner brought this proceeding on February 19, 2004.
In his second preanswer motion to dismiss, respondent argues that because no notice to cure is annexed to the termination notice he received, the termination notice does not contain sufficient factual allegations to support this holdover proceeding. (See respondent’s second motion to dismiss 11 5.) The court may not entertain this motion. A respondent may make only one motion to dismiss. (CPLR 3211 [e].) This rule is “designed to avoid duplication because the movant can join in the one motion whatever grounds she has.” (David D. Siegel, NY Prac § 273, at 432 [3d ed 2004].)
In his second preanswer motion to dismiss, however, respondent also argues that petitioner’s notice to cure did not allow him sufficient time to cure. A notice to cure is important to tenants. The lease between the parties allows petitioner to terminate respondent’s tenancy for substantial violations but also requires that petitioner notify respondent of the alleged violations by a notice to cure. The five-day notice to cure is all that stood between respondent and a holdover proceeding. The notice, served on February 4, 2004, required that respondent cure by February 11, 2004. (See respondent’s second motion to dismiss 11 4.) This allowed respondent only seven days to cure, including the time the notice was in the mail.
According to respondent, a recent Court of Appeals opinion, which affirmed a Second Department opinion but also created a new rule, applies to this proceeding. Respondent’s argument is *807 based on that case: Matter of ATM One v Landaverde (2 NY3d 472 [2004]). Because the Court of Appeals decided Landaverde on June 3, 2004 — respondent’s first motion to dismiss was made on March 25, 2004, and decided on April 29, 2004 — respondent’s argument is based on new law and can be presented to the court in a second motion to dismiss, thus providing an exception to CPLR 3211 (e).
The one-motion rule does not bar a court from considering additional defenses raised for the first time in a second motion when they could not have been submitted earlier. (See Held v Kaufman, 91 NY2d 425, 430 [1998].) Although in Held the defendants’ additional defenses could not have been “submitted at an earlier juncture because of the indefiniteness of plaintiffs initial pleading” {id. at 430), Held applies here because respondent had no basis to submit his papers earlier. The decision on which respondent’s second motion is based — Landaverde—had not yet been rendered.
II. The Landaverde Rule
In Landaverde, a landlord brought a holdover proceeding against a tenant. The tenant received the notice to cure nine days before the date by which she needed to cure, although the applicable regulation — 9 NYCRR 2504.1 (d) (1) (i) (c) — afforded the tenant at least 10 days within which to cure, according to the Second Department. (See Matter of ATM One v Landaverde, 307 AD2d 922, 922-923 [2d Dept 2003].) The Second Department noted that there was “no provision in the applicable [DHCR rent stabilization] regulations that specifie[d] whether . . . the service is deemed to have occurred (a) at the moment that the notice was delivered to an agent of the postal service . . . , (b) at the moment that the notice was delivered to the address of the tenant . . . , or (c) at the moment that the tenant personally opened the envelope and received the notice.” {Id. at 923.)
The Second Department found in Landaverde “that to define service in terms of receipt rather than in terms of mailing is more consistent with the policies underlying the [DHCR’s] regulations.” (307 AD2d at 923.) Under the Second Department’s holding, it is possible that the notice to cure in this proceeding afforded respondent adequate time to cure. The notice was mailed on February 4, 2004, and required that respondent cure by February 11, 2004. Assuming that respondent received the notice by February 6, 2004, respondent would still have had five days to cure.
*808 On June 3, 2004, however, the Court of Appeals affirmed the Appellate Division’s decision in Landaverde but developed a new rule: Landlords who elect to serve by mail must “compute the date certain by adding five days to the . . . minimum cure period.” (Landaverde, 2 NY3d at 477.) Under this rule, petitioner would have had to mail the notice by February 1, 2004 to require respondent to cure by February 11, 2004.
The issue, then, is whether Landaverde applies to this proceeding. If so, then petitioner’s notice to cure is invalid.
III. The Possible Applicability of Landaverde
In Landaverde the Court of Appeals held that landlords who elect to serve by mail must assume that the cure notice could spend five days in the mail before a tenant might receive it. (See 2 NY3d at 477.) By its terms, Landaverde applies only to rent-stabilized apartments subject to the DHCR’s regulations enacted under the Emergency Tenant Protection Act (ETPA). The Court of Appeals found DHCR’s requirements regarding the landlord’s service of its notice to cure by mail so vague as to merit the clarification it provided in Landaverde. The Court of Appeals held that “the addition of a definite number of [five] days . . . provides a practical and fair solution to this regulatory ambiguity.” (Id. at 478.) The Court also held that service under the law is deemed complete on mailing. (Id.)
Petitioner is a Mitchell-Lama housing cooperative regulated by DHCR; it is not subject to the ETPA. Moreover, no DHCR regulation concerning service of notices to Mitchell-Lama cooperators requires petitioner to add an additional five days to the cure period when it mails a notice to cure. Nonetheless, the principles behind Landaverde apply to Mitchell-Lama cooperatives.
The Court of Appeals found in Landaverde that “[i]n matters of statutory and regulatory interpretation . . . ‘legislative intent is the great and controlling principle . . . .’ ” (Landaverde, 2 NY3d at 476-477, quoting Mowczan v Bacon, 92 NY2d 281, 285 [1998].) The regulations at issue in Landaverde were adopted pursuant to the ETPA; the Court noted that “[t]he Legislature enacted the ETPA to address the ‘serious public emergency’ in housing across New York State as evidenced by ‘an acute shortage of housing accommodations.’ ” (Id. at 477, quoting McKinney’s Uncons Laws of NY § 8622 [Emergency Tenant Protection Act of 1974 § 2; L 1974, ch 576, § 4, as amended].) The Court explained that with the concerns underlying the ETPA requiring landlords to compute an additional five days when *809 serving cure notices by mail “balances the need for orderly and efficient resolution of lease violations with the stated legislative purposes of the ETPA.” (Id. at 478.)
The stated purposes of the ETPA are similar to those behind the Mitchell-Lama program: Both were created to address a housing problem. When the New York Legislature enacted the Mitchell-Lama program in 1955, it “declared that there exists in municipalities in this state a seriously inadequate supply of safe and sanitary dwelling[s] . . . ; that such conditions are due, in large measure, to over-crowding and concentration of the population . . . ; that such conditions constitute an emergency . . . necessitating speedy relief.” (Private Housing Finance Law §11.)
Furthermore, as petitioner itself notes, DHCR has not enacted a regulation concerning service of cure notices to Mitchell-Lama cooperators. If the Court of Appeals found DHCR’s regulation regarding cure-time measurement unclear, more unclear yet is the absence of any regulation. Both rationales the Court stressed in Landaverde — “the need for orderly and efficient resolution of lease violations [and] the stated legislative purposes of the ETPA” (2 NY3d at 478) — exist in relation to Mitchell-Lama cooperatives.
The notice to cure afforded respondent insufficient time to cure: It did not account for the need to add five days for a cure notice sent by mail. Respondent’s motion to dismiss is therefore granted.